### STATE v MILLER

Ohio Appeals, 2nd Dist, Franklin Co

No 2942. Decided Feb 28, 1939

Samuel L. Zuravsky, Columbus and Maurice K. Topson, for defendant-appellant.

R. J. Bartlett, prosecuting attorney, Columbus; H. L. Holden, asst. pros. atty., Columbus, and D. S. Webber, asst. pros. atty., Columbus, for plaintiff-appellee.

## OPINION

By HORNBECK, PJ.

The defendant was indicted, tried and convicted for the offense of second degree manslaughter in the unlawful and unintentional killing of Donald Porter in violation of §§12603-1 and 6296-30c, GC.

After the motion for new trial was overruled the defendant was sentenced to the Ohio penitentiary. The motion for new trial consisted of two branches, the first, that the verdict is not sustained by sufficient evidence and is contrary to law. Second, error in the admission of certain photographs to which objections were made and exceptions noted. An appeal on questions of law is prosecuted.

In this court, in addition to the two grounds set forth in the motion for new trial, there are eleven other grounds of error. We are required to consider only those errors to which the trial court's attention was directed in the motion for the new trial.

The assigned errors have been comprehensively briefed but counsel for the appellant has not followed their numbering as in their brief nor is there any heading classifying the error under which the argument in the brief is made. We will therefore discuss the questions presented somewhat generally attempting to consider all matters of substance properly brought to our attention by the appeal.

The conviction was grounded upon a charge of violation of three separate sections of the code. The verdict returned is general in form so that we do not have the means of determining whether it was grounded upon a finding of violation of more than one of the sections of the code which it is charged were violated.

A meager statement of the facts appearing is that Donald Porter and several boy friends, all about sixteen years of age, and several girls had been at Reynoldsburg on the night of March 26, 1938. Five of these boys and one girl started toward Columbus, their home, in an old Ford truck and were moving westwardly on East Main Street. They had traveled but a few miles when their gasoline supply was exhausted. Two or three of the boys went back toward Reynoldsburg to a filling station, secured gasoline and a flash light, returned to the truck, put the gasoline in it but found that it would not start. Thereupon all of the boys got out of the truck, leaving the girl only in the front seat. All of the boys assisted in moving the truck forward along the highway. Gardner Banfield was in front holding the wheel and pushing. Donald Porter and Martin Costello were pushing the truck from the rear, Donald being near the left rear end and Martin to his right. It is testified by all the boys who were on the stand that the truck was moving to the extreme right or to the north part of the highway and that the right side of the truck was at a distance of not more than two feet from the right or the north edge of a five foot pavement along the thoroughfare. It is testified by the boys, particularly Costello, that while pushing the truck Porter held the flash light, which was given to him at the filling station, in his hand and moved it up and down for the purpose of attracting attention of cars that might be coming from either direction. They had moved the truck some forty or

fifty feet down the road when a DeSoto car, driven by the defendant, approached from the east. This car came up in close proximity to the truck, then bore sharply to the left. The car struck Donald Porter and the left rear end of the truck, drove on past the truck, swerved to the right over the north curb of the thoroughfare, progressed a short distance then veered at an angle across the highway, struck a Ford car, then moved further westwardly and came to rest in a field alongside of and to the south of the highway. Donald Porter was instantly killed. It was evident that he was struck with great violence. One of his shoes and one sock were found some six or seven feet from his body. His skull was crushed and his brain was torn from his head and portions thereof were strewn on the truck, on the automobile, on the defendant and the young woman with whom he was riding.

The defendant, with a young woman, had been automobile riding and had stopped at a restaurant and dance room in Reynoldsburg. He admittedly had drunk one and a half highballs and a small portion, according to his testimony, from a bottle of whiskey which was in possession of a friend.

All of the boys who testified said that the defendant obviously was intoxicated on the night of the collision, that he manifested his drunkenness by staggering, conduct and statement. They were corroborated in this testimony by other witnesses. The boys testified that the truck carried lights and a spotlight but they differed in their statements as to what lights were burning. Banfield said that two red lights, one on each corner of the rear end of the truck were burning at the time of the collision but that although the spot light on the left rear end was in working condition he did not believe that it was lighted. Sansbury says there was a spot light and a red tail light on the left rear of the truck, that the tail light was lighted but he does not know if the spot light was burning. Costello says that there were two red tail lights, one to the left and one to the right, and a spot light; that both red tail lights were burning and that the spot light was working that night. Whether or not by this statement he meant to say that it was burning, we can not tell from the record.

Banfield fixed the speed of defendant's oncoming car at 50 miles per hour, Sansbury at 50 to 60 miles per hour, and Costello, 45 to 55 miles per hour. Costello said that the lights on defendant's car were dim and yellowish in appearance.

The defendant's testimony was brief. It was to effect that he was not intoxicated, was an experienced driver of automobiles, was moving at a speed of 38 to 40 miles per hour, that as he approached the truck an oncoming automobile with brilliant lights marred his vision and that he did not see the truck until he was almost upon it, that he swerved to avoid it, lost control of his car and his subsequent movements were occasioned by lack of control of the car. If this latter statement was true the jury should have acquitted. Kormos v The Cleveland Retail Credit Men's Co., 131 Oh St, 471. It further appeared that the defendant had been interrogated at the coroner's inquest and by an Assistant Prosecutor, Vincent Martin, after the collision. It was testified that the defendant said to Martin that he had had some difficulty with his girl friend; that he was trying to make up his differences with her, had his right arm about her and had kissed her some time before the collision; that he admitted that it was probable that his failure to observe the truck was caused by his attention to the girl by his side. It was further testified that he admitted seeing the flash light, which was the light held in the hands of Donald Porter.

The defendant produced witnesses as to his good reputation and several who stated that he was not intoxicated on the night of the accident. Upon the record which we have set forth to a rather limited extent it is insisted by the appellant that the verdict is contrary to the weight of the evidence and that there is no support for a finding that the defendant violated any of the sections involved.

This is a case typical of most cases which have gone to trial wherein there is a dispute of fact. There is ample evidence in the record to support a finding that the defendant was violating each and all of the sections of the code set out in the indictment. The jury had a right to believe that no good reason appeared why the defendant could not and did not see the truck in time to have avoided striking it and Porter. The jury could have found that the truck was well lighted and if it had believed the testimony of two of the boys it must have concluded that Donald Porter had a flash light which should have been visible to the defendant. It may be, however, that the jury did not find that the truck was well lighted or it may not have been satisfied that Porter waived the flash light so that the defendant could see it. Even so, the defendant could have been found guilty as upon a violation of §12603, GC, in that he did not have his car within such control

as to stop it within the assured clear distance ahead, which distance should have been assured by his own headlights. This finding by the jury alone, if it was the proximate cause of Porter's death, would support the verdict. State v Figuli, Ohio Law Rep., Feb. 20, 1939, p. 363. The jury likewise may or may not have found that the defendant was intoxicated at the time of the collision.

The jury is the trier of the facts and weighs the credibility of the witnesses. In this case, in the light of the physical facts appearing, together with the testimony of the witnesses, which the jury had the right to believe, there is ample support for the verdict of the jury.

There is but one other question which was raised in the motion for new trial, namely, the correctness of the admission of the photographs, plaintiff's exhibits 3 to 20 inclusive, which represent different views of the truck, defendant's car, the Ford which he struck and parts of the highway and land adjacent thereto where the accident occurred. These pictures were identified in the first instance by Corporal Van Allen of the State Highway Patrol, who testified that he had taken the pictures. His interrogation in several instances was improper because some of the questions and some of the answers assumed certain facts which the witness did not know and had not observed, but to these questions and answers no objections were interposed. The witness said that the pictures were true representations of the objects photographed, which was proper identification, but did not and could not say that they were true likenesses of the objects as they appeared immediately following the collision. Thereafter throughout the record other witnesses who had observed the originals, from which the photographs were taken, at a time nearer the accident, also identified several of the photographs. The pictures were first offered and admitted in evidence at the conclusion of Officer Van Allen's testimony. Objections were interposed and exceptions noted by the defense at this time. Later at the conclusion of the testimony of Mr. Martin, Assistant Prosecutor, these exhibits were again offered and admitted under objection.

The objection now urged to the competency of these exhibits is that certain of them disclose the result of the collision of the DeSoto after it had struck the truck

and that the damage appearing in the pictures of it may have been the result of impact other than that which it suffered when it struck the truck, and further that some of the photographs were taken after the vehicles had been moved.

There is no merit in the claim that it was erroneous to admit photos of the DeSoto after it came to rest. Obviously the occurrences from the time that the DeSoto and the truck came into collision until the De Soto came to rest were but one event. The pictures of the De Soto and the Ford were most helpful upon the one proposition of the speed of the automobile which defendant was driving. Likewise the photo of the De Soto showing that a strip of metal, intended to provide drainage, had been torn from the right side of its top in connection with the fact that this strip appeared in the photos of the truck, was most convincing of the impact of the De Soto and the truck.

The photos were admissible as against the objection thereto upon the ground assigned. It is indeed doubtful if they were properly identified as representative of the likeness of the objects at a time so near to the occurrences under consideration as would permit their reception under the strict interpretation of rules of evidence. Obviously the purpose of the admission of photographs is to give to the jury a visible manifestations of the appearances of the objects involved in a law suit as those objects appeared at the time under consideration.

We had the question of the admissibility of photographs before us in the case of Hoover v Turner, 13 Abs 101. There we pointed out that it was not necessary that the person who took the photographs should identify them as a likeness of the object as of the time under consideration; so in this case after the witness had indicated the times when, the places where and the conditions under which the photographs were taken, one or more of the many witnesses who were at the scene of the collision immediately thereafter or so soon thereafter as that in probability there had been no change in appearance of the vehicles, could have identified the photographs so as to make them admissible.

The utmost precaution should always be exercised to make certain that the photographs, submitted to a jury, **Headnote 7.** have been identified as true likenesses of the objects

photographed at the time of the occurrence under consideration in the case.

Upon this assignment of error we find first that the ground of error assigned is not well made and that though technically the photographs were not properly admitted, their exhibit to the jury could not have been prejudicial. There is no showing at any place in the record that there had been any physical change in any of the autombiles involved in the collision and the photos do not so control the basis of the determination of any material issue in the case as to require us to say that their admission was prejudicial.

We have disposed of the two errors assigned, predicated upon the grounds of the motion for new trial. We briefly consider other questions urged in the other assignments of error and in the briefs.

Objection is made to the testimony of Assistant Prosecutor Martin. It is urged that his statements came months after the occurrence and that manifestly they were too exact to be probable. This, of course, was purely a question for the jury as to the extent to which the testimony of the witness might be accepted in the light of all the circumstances.

Much is said about a sketch, plaintiff's exhibit 21, as to which a witness, Charles Urton, was interrogated at length. The sketch, exhibit 21, was not made by Mr. Urton but from a smaller one which he had thereofore prepared. It seems that in addition to the known stationary physical objects at or about the place of collision it carried the supposititious movements of the vehicles involved in the collision. This, of course, was not the proper form in which to produce testimony because based upon assumptions, not only of the witness himself, but upon statements that had been made to the witness by others whose testimony was available. This plat was not admitted in evidence and does not properly come to us in the Bill of Exceptions so that the extent to which it was used nor the objects which it was intended to exhibit are not before us and therefore error can not be predicated upon its use.

It is urged that the court erred in refusing to admit certain testimony desired to be offered by defendant by witnesses Ann Mrazek and Lee Voltz. An examination of the record discloses that no objection was made to the ruling of the court and no proffer of the testimony of the witnesses.

It is asserted that the trial judge was prejudicial in his attitude. The only incident to which our attention is directed is the overruling of the motion of defendant for a directed verdict at the conclusion of plaintiff's case without permitting argument. There is no basis whatever for this contention. The court may or may not in its discretion permit argument on a motion such as the one under consideration. The only question is, was he correct in his ruling. The only proper purpose of the motion was to preserve the record as the State at the conclusion of its evidence had made its case on every element involved therein.

It is urged that §12603-1 GC is unconstitutional. If this claim were well made it would not be determinative because as we have heretofore indicated the conviction might be supported, though §12603-1 GC was not violated. But it is probable that the Section is constitutional. The objection made to it is that it is not specific enough in defining what is due regard for the safety and rights of pedestrians. This claim is substantially the same as was urged against the constitutionality of §12603 GC, which has been declared to be constitutional in **State v Schaeffer, 96 Oh St 215** and in **O'Mara v State, 16 Oh Ap 62.** Both of these **Sections, 12603** and **12603-1 GC,** carry the common law obligation of due care into statutory enactment.

Finally we cannot properly consider the constitutionality of the Sections involved because the question was not made in the trial court but is presented for the first time here. Hornbeck and Adams Trial and Appellate Practice, 296.

Finally it is urged that the defendant was not accorded his rights under §13452-1, GC and that the court pronounced an unduly severe sentence in committing the defendant to the penitentiary. The record is silent on the first proposition. It does not appear that any application was made to the court for the opportunity to be heard in mitigation under the Section and we must presume, in the absence of a showing to the contrary, that the defendant was accorded all of his rights under the law. Inasmuch as the sentence imposed is within the terms of the statute violated, no proper objection can be made to the sentence of the court thereunder.

The judgment will be affirmed.

GEIGER and BARNES, JJ, concur.