**SMITH v PENNSYLVANIA RD. CO.**

Ohio Appeals, 2nd Dist, Franklin Co

No 3383.   Decided Nov 13, 1941

258

Hamilton & Kramer, Columbus, for plaintiff-appellee.

Burr, Porter, Stanley & Treffinger, Columbus, and Ralph E. Weaver, Columbus, for defendant-appellant.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment in the sum of $2500.00 and costs in favor of the plaintiff against the defendant.

The action was for damages for personal injuries, recovery of funeral expenses paid by the plaintiff for his deceased wife and property damage to plaintiff's automobile, all of which damage was occasioned when the automobile which plaintiff was driving was struck by a southbound passenger train of defendant at a crossing of what is known as the Roberts Road in Franklin

County, Ohio, over the tracks and right of way of defendant company.

Eight errors are assigned, some of which are broken up into subheadings. The errors assigned are:

· (1) The admission of testimony on behalf of plaintiff.

(2) Overruling of defendant's motion to strike certain specifications of negligence from the petition.

(3) Overruling of defendant's motion for directed verdict.

(4) The Court's charge to the jury.

(5) Overruling of defendant's motion for judgment notwithstanding the verdict.

(6 and 7) The verdict is contrary to law and against the manifest weight of the evidence.

(8) Overruling of defendant's motion for new trial.

. The petition alleged that on June 5, 1939, plaintiff was operating his automobile in an easterly direction on Roberts Road, approaching the railroad crossing of defendant at a point on said road about one-half mile west of the Dublin Road; that the crossing consisted of two sets of tracks and a third siding track; that plaintiff, before proceeding across the railroad, stopped his car, placed it in low gear and started to cross the tracks; that the wheels of his automobile dropped into depressions between the tracks causing his motor to stall and that while in this position his automobile was struck by one of defendant's trains traveling in a southerly direction on said tracks.

The specifications of negligence assigned were:

(1) Failure of defendant to provide a good and sufficient crossing over its said tracks on Roberts Road, in that between said tracks there were holes of a depth varying from two to five inches; that said crossing was not evenly graded; that the approach to said crossing was not evenly graded to the first or west rail of defendant's tracks; that between the rails there was a depression which was not planked and was not filled with gravel or other filling, so that the wheels of an automobile passing over said crossing would drop forcibly into said depression.

(2) Failure of defendant to sound a whistle or other warning as it approached the crossing at a rate of speed of approximately 70 miles per hour.

(3) Failure of defendant to repair the defective, unsafe and depressed condition of its crossing, although it had been frequently notified of the danger in connection therewith.

(4) Failure to provide a clear and unobstructed view of the approach to said crossing, in that bushes, shrubs, trees and vegetation were permitted to grow along the right of way of the defendant, making it necessary for automobiles approaching said crossing to approach almost to the tracks before having a clear vision to the north.

(5) Failure of defendant to make any observations in order to see the motor vehicle of plaintiff * * * .

The answer of defendant was a general denial of any negligence on its part and an averment that plaintiff was contributorily negligent, proximately causing or contributing to cause the accident.

The cause was tried to court and jury and verdict returned for plaintiff in the sum of $2500.00, upon which the court entered judgment after overruling defendant's motion for judgment veredicto non obstante and for new trial.

. The errors assigned are made the subject of extended and comprehensive briefs by both parties. It is due counsel for the parties in this case to say that the briefs which they have tendered have been most helpful and closely conform to the rules respecting briefs which this court has heretofore suggested.

We will consider the assigned errors in the order set up in appellant's brief. First, that the court erred in admitting the photographs, plaintiff's exhibits D and E. Plaintiff's exhibits D and E were identified by the plaintiff and his son, George Smith, D as a "true and correct representation of the appearance of that track and surroundings as of

the day the accident occurred", and E, "as a true and correct representation of the appearance of the crossing as of the day of the accident". F clearly is a photograph of the crossing taken from Roberts Road, but E obviously is a view from the crossing to the north from the road.

George Smith, the son, stated that the photographs were taken either one day or two after the accident. All three of the exhibits, D, E and F, were submitted at one time to George Smith, who said that they were true and correct representations of the appearance of the crossing and the tracks on the day of the accident. Both witnesses were interrogated at length by counsel for both parties as to the objects which appeared in the pictures, the position from which they were taken and the portion of the crossing of the tracks which they portrayed. The defendant objected to the admission of the photographs, stating that it did not appear when they were taken, but it is urged in this court and throughout the examination of the witnesses in the trial court, that the photographs did not truly represent the condition of growth of trees, shrubs, etc., on the right of way of the company and in proximity thereto; that it could not be determined from the photographs whether or not the growth shown in them was upon the right of way of defendant or upon adjacent lands. The court properly stated to the jury during the examination of the witnesses that,

"I think you should limit your questions, Mr. Kramer, to anything growing on the right of way. I think it would have to be on the right of way."

Our conclusion upon an examination of the record is that at the time that the witnesses were interrogated about the photographs the questions were proper and that sufficient and appropriate identification was made and that the photographs were properly admitted, under the rule announced by the Supreme Court in **C. H. & D. Ry. Co. v De Onzo, 87 Oh St 109,** and by this court in **State v Miller, 28 Abs 575,** and in **Hoover v Turner, 13 Abs 101.**

The second assignment of error is that the court erred in overruling defendant's motion to strike the second, third, fourth and fifth specifications of negligence from the petition.

At the conclusion of plaintiff's case and also at the conclusion of the whole case there was testimony in the record tending to support each and all of the aforesaid charges of negligence.

The second specification of negligence is the charge that defendant failed to sound any timely warning of the approach of the train. The plaintiff upon interrogation said that as he came up to the crossing he stopped his car, shifted into low gear, looked both ways and saw no oncoming train; that he knew the track was rough and because his wife was suffering with rheumatism he tried to go over the rails easily so as not to jolt her, with the result that he killed his motor after the front wheels had gone over the first rail and up to the second rail of the first or southbound track, and that up until the time that he had killed his motor he had heard no whistle, and that the only whistle he did hear was sounded "away this side of the whistle post".

Mr. Hubert M. Rogers, who was in the third field south of the place where the accident occurred, said that he heard one small whistle, a quick blast, followed by a crash very soon thereafter.

Clarence Melton, who was on the east side of and about a hundred yards away from the crossing at the time of the accident said that he recalls no whistle. These witnesses said nothing about a bell, but defendant's witness, Jesse C. Cale, testified that he was about one-sixteenth of a mile from the Roberts Railroad crossing, some 250 to 300 feet away, and that he heard. the whistle before the plaintiff got onto the tracks, but that he did not hear any bell. The other testimony on the subject was positive and affirmative to the effect that the whistle was sounded and the

bell rung as required by law. From this state of the record it is urged by the appellant that as the testimony to the effect that no whistle was heard was negative in form it could not be the basis for support of the second averment of negligence. We do not agree that the law of Ohio supports the claim of the appellant.

We are cited to a number of federal cases to the effect that where witnesses testify that they were in a position to see and hear and that singals were given from a locomotive, and that the plaintiff's witnesses were not so situated and merely stated that they heard no such signals, there was presented no issue for submission to a jury. Chicago & E. O. R. R. Co. v Seller, 5 Fed. (2d) 31; Bergman v Rd. Co., 14 Fed. (2d) 580; Railroad Co. v Anderson, 29 Fed. (2d) 479; Railroad Co. v Baldwin, 144 Fed. 53. There is no material difference in the law as announced by the Ohio courts, but in C. C. C. & St. L. R. R. Co. v Richerson, 19 O. C. C. 388, where a witness who was paying attention and was near enough to hear and see, said that he looked and listened for a train and saw none, and that the bell was not rung nor whistle sounded, it is not negative testimony but is positive or affirmative testimony. The plaintiff was in such location with respect to the oncoming train that it may be assumed that he was attentive and that he was listening for any warning that might be given from an oncoming train, and his testimony that he heard no whistle until the train was within a short distance from him, is, sufficient to carry the question, whether or not a signal was seasonably sounded, to the jury. The other testimony on the subject was merely cumulative and though negative was to a degree corroborative of plaintiff's evidence.

This Court in Nypano R. R. Co. et v Blase et, 2 Oh Ap 284, held that an issue was made when some of the witnesses for the plaintiff said that they did not hear a bell rung or whistle blown, while the defendant's witnesses testified that the whistle was blown and the bell rung.

We doubt if any testimony offered by the plaintiff was sufficient to sustain the claim that no warning was given of the approach of the train, because the only witness who testified that he did not hear any whistle, although near enough to have heard it had it occurred, admittedly was paying no particular attention to whether or not any signal was given of the approach of the train. However, as we have stated, we believe that the testimony that the signal was not seasonably given was of sufficient probative effect to carry the question to the jury, and, upon the averment that no signal was given, it was permissible to take the testimony that no seasonable signal was given. The statute on the subject, not only requires a signal to be given, but that the whistle shall be sounded at a distance of at least 80 and not further than 100 rods from a crossing, and that the bell shall be rung continuously until the engine passes the crossing.

The third averment of negligence which defendant sought to have stricken upon motion is that the defendant failed to repair the defective, uneven and depressed condition of its crossing, although it had been frequently notified of the danger in connection therewith. Plaintiff failed to produce any proof of express notice to the defendant of the condition of the crossing and the Court expressly so stated to the jury. The specification relating to actual notice was taken from the jury. There was an abundance of evidence to the effect that the crossing was dangerous and that the condition had continued for a long period of time prior to the date of the accident, which clearly established, if true, that the defendant company was put upon constructive notice as to the condition of the crossing. The Court properly charged that by statute the defendant company was required to keep its crossings, ap-

proaches, tracks, side tracks and switches in good and sufficient repair and that this obligation ▇▇▇ was enjoined upon the company with or without notice. So that if the jury found that there was a violation of this statutory provision at the time that the plaintiff came up to and passed over the crossing, this was sufficient, independent of further proof of actual or constructive notice.

The fourth specification of negligence which defendant moved the Court to take away from the jury is, that the defendant failed to provide a clear and unobstructed view of the approach to the crossing in that bushes, shrubs, trees and vegetation were permitted to grow along the right of way of the defendant, making it necessary for automobiles approaching said crossing to approach almost to the tracks before having a clear vision to the north.

It is argued with much force and rather persuasively by the appellant that there is no proof in the record of any vegetation growing upon the right of way of defendant company to the north of the crossing, and that whatever growth was in the line of vision of plaintiff was upon lands which were not under the control of the defendant; that under the leading case of **Kistler v Railroad Company, 66 Oh St 326**, the company is not required to take cognizance of weeds, bushes or other vegetation growing ▇▇▇ on any place other than defendant's right of way. Counsel for the plaintiff recognized this rule in the averments of plaintiff's petition. The Court readily recognized it and so instructed the jury at the time of receiving the testimony and twice in the general charge.

We are satisfied from an examination of the photographs and from the testimony of the witnesses in connection with and independent of the photographs, there was some proof of some growth on the right of way of defendant company which may to a degree have impaired the view of the plaintiff as he approached the crossing. This is all that the petition alleges. The approach to the crossing is much greater than a few feet immediately in front of the railroad tracks.

The fifth specification of negligence which appellant insists should have been taken from the jury is that the defendant failed to make any observation in order to see the motor vehicle of the plaintiff as he was using said public crossing. The facts, as delineated by the plaintiff, describing the manner in which he approached the crossing, the stalling of his car, his attempt to back up and get off the track, much and possibly all of which should have been in plain view of the operatives of defendant's train, that admittedly they sounded no timely warning, did not see plaintiff until he was on the track, and failed to slow up their train at all, were some evidence tending to support the fifth specification of negligence.

It must at all times be kept in mind that, as to any specification of negligence, it is not sufficient to establish the averment which constitutes the negligence, but to be the ▇▇▇ basis of a verdict it must also be a proximate cause of the injury complained of. Upon the specifications of negligence which we have been considering, there was some evidence tending to support all of them, not strong, in our opinion, and possibly not a proximate cause of plaintiff's injuries in **any** instance. The Court committed no error in submitting them to the jury.

The third assignment of error is that the Court erred in overruling defendant's motion to direct a verdict in its favor at the close of all the evidence. It follows from what we have heretofore said to the effect that there was probative evidence upon ▇▇▇ all specifications of negligence submitted to the jury, that this assignment of error is not well made.

The fourth assignment of error is that the Court erred in its charge to the jury. The first part of this assign-

ment is directed to the submission to the jury of the issues made by the specifications of negligence which defendant insists should have been stricken from the petition and which we have heretofore discussed. Special objection is made to that part of the charge wherein the Court defined the general obligation of the engineer of the locomotive as it approached the crossing, and particularly wherein it was stated that he was bound to use ordinary care to prevent injury, and that after it became apparent to him that the person on its track can not or will not keep away from the track, to do all he reasonably can to prevent injury. This general observation of the Court was sound and may be related to the specific averments of negligence set out and was not objectionable, certainly not in the absence of some specific objection directed to the language of which complaint is now made.

We find no merit in the third and fourth subdivisions of the fourth assignment of error relating to the refusal of the court to strike the second and third specifications of negligence, both of which we have heretofore considered and discussed.

The fifth assignment of error is directed to the action of the trial judge in overruling defendant's motion to render judgment in its behalf notwithstanding the verdict of the jury in favor of the plaintiff.

This, in our judgment, is the one assignment of error which raises the material and decisive question in this case. To determne it it will be necessary to consider certain interrogatories submitted by the defendant and answered by the jury as follows:

"No. 1. Q. At the instant plaintiff's automobile was driven upon the eastbound main or near railroad track, where was the locomotive, i. e., how far distant, in fact, north of Roberts Road?

A. 400 feet.

No. 2. Q. At what rate of speed, in miles per hour, did the train approach the crossing?

A. 65 to 70 per hour.

No. 3. Q. Did the plaintiff stop his automobile ten (10) or fifteen (15) feet distant west of the eastbound main or near the track before driving upon the railroad track?

A. No.

Q. If your answer to the foregoing question is in the negative, did the plaintiff stop his automobile at all before going upon the railroad track?

A. No.

No. 4. Q. At what rate of speed, in miles per hour, did the plaintiff's automobile approach and enter upon the railroad crossing and tracks?

A. 15 to 18 miles per hour.

No. 5. Q. Did the plaintiff, Harley B. Smith, when ten or fifteen feet distant west from the eastbound main, or near track, have an unobstructed view to the north along the said railroad track for a distance of a mile or more?

A. Yes.

No. 7. Q. What was the distance, in feet, from the right of way fence on the west side of the railroad right of way to the eastbound main or near track, measured from a point in Roberts Road where the said fence line, if extended, would intersect said road to the nearest rail of the eastbound track?

A. Twenty-seven feet."

In considering the assignments of error, heretofore discussed, Nos. 1, 2, 3, and 4, every intendment favorable to the plaintiff has been indulged to support the action of the trial judge, and likewise the full right was accorded to the jury to accept the version of the manner in which the accident occurred as delineated by the plaintiff and his witnesses. Upon the motion for directed verdict the trial judge was likewise required to indulge every reasonable inference to be drawn from the testimony in favor of the plaintiff. At that time he could not know how the jury would resolve the testimony upon the controverted questions of fact. In the brief of appellant there has been a tendency to accept the findings of

264

the jury on the special interrogatories as the basis upon which the trial judge should have supported defendant's motion for a directed verdict. It is necessary at all times to divorce the situation presented to the trial judge upon the motion for directed verdict from that which was presented on the motion for judgment after the verdict.

If the answer to any of the interrogatories is so inconsistent with the general verdict that they may not be reconciled, then the special findings must control. §11420-18 GC.

The courts in defining the rule when a special finding may be found to control a general verdict have stated it in various language, all to the same effect, namely, that the special findings must be clearly irreconcilable with the general verdict; **Gas Co. v Oil Co., 113 Oh St 354;** inconsistent and irreconcilable with the general verdict; **Prendergast v Ginsburg, 119 Oh St 360.** Special findings must be in conflict with verdict and conflict clear and irreconcilable; **Ford Motor Co. v Potomac Ins. Co., 27 Oh Ap 279.** General verdict should stand unless the special findings are necessarily repugnant to it; **Wicker v Messinger, 22 O. C. C. 712.** All special interrogatories and answers must be considered before general verdict is supplanted, and any reasonable hypothesis indulged to reconcile answers with it; **Cincinnati v Fry, 3 N. P. (N.S.) 627.** Special findings of fact override the general verdict only when both cannot stand together, and when the special findings can not by any hypothesis be reconciled with the general verdict; **Gearhart v Columbus Railway P. & L. Co., 65 Oh Ap 225.** Special findings as to contributory negligence must be absolutely conclusive to control general verdict, **B. & O. Ry. Co. v Stultz, 18 O. C. C. 93.**

Upon this motion we may consider only the pleadings, the general verdict and the interrogatories and answers thereto. Gearhart v Cols. Ry. P. & L. Co., supra. Do they completely negative the finding of the general verdict that the defendant was negligent in one or more of the particulars alleged; that such negligence proximately caused plaintiff's injuries and that the plaintiff is not chargeable with contributory negligence?

The jury elected not to believe the statement of the plaintiff that he stopped before he drove upon the crossing. That is, no doubt, predicated upon the testimony of the witness for the defendant, Mr. Jesse C. Cale, who was following the plaintiff as he approached the crossing. This failure to stop does not, in and of itself, require that the plaintiff be charged with contributory negligence.

He could have observed due care as he approached the crossing although he did not bring his automobile to a full stop, provided that he exercised his faculties in other respects as an ordinarily prudent man would have done in the situation presented. The jury did not specifically find that plaintiff did not look to his north as he was about to go on to the crossing at a time when such looking should have been effective. The plaintiff states that he did so look and the general verdict supports this conclusion because if he had not done so, under the general charge of the court he must have been found chargeable with contributory negligence. The plaintiff testifies that when he first looked he saw no train, but that when he did see the oncoming locomotive it was approximately 1000 feet away. The jury chose to believe other testimony and fixed the distance of the locomotive when he went upon the track at 400 feet. This answer in our judgment presents the closest question in the record, as it reflects upon the contributory negligence of the plaintiff.

In probability, the only negligence of the defendant company which proximately caused the injuries complained of was the dangerous condition of the railroad crossing at the southbound tracks. The special findings of the jury indicate that its general verdict was predicated upon the determination

that the accident was caused by the dangerous condition of the crossing.

If the train was approaching the crossing at a speed of 65 to 70 miles per hour and was but 400 feet away when the plaintiff went onto the first rail of the southbound track, and plaintiff was then moving 15 to 18 miles per hour and did not stop his automobile 10 or 15 feet distant in his approach to the track, all of which from the answers to the interrogatories must be accepted as the facts, then if plaintiff looked for the oncoming train, clearly the failure to sound a warning, maintain a lookout or clear the right of way of growth which was shown to be upon it could have had no causal relation to the collision. Obviously, no lookout, no warning and no change of conditions about the right of way could have prevented the accident under the answers to the interrogatories, and the admission of evidence tending to support claims of negligence in these respects weighed little with the jury.

The petition averred in specification of negligence No. 1 the physical condition of the road at the crossing and as it approached it, the tracks, the ties and the depressions on both sides of the rails of the southbound track and further plead the notice to the defendant of this condition. Without elucidating the testimony, it is sufficient to say that this record abounds with proof which the jury had the right to accept, that the condition averred in the petition in specification No. 1 was true, and that the defendant company violated the statute and was likewise chargeable with constructive notice of the condition of the crossing. This crossing could have been found to be dangerous and that which it is evident occurred might well have occurred, namely, an automobile caused to stall while upon the tracks. If an automobilist drove fast enough to be certain that he would clear the rails he must have suffered the necessary shock which one witness testifies would have been enough to break the springs of an automobile. If he drove too slowly, if his automobile was not in the best of

condition, he may have stalled upon the tracks.

Plaintiff was moving from 15 to 18 miles per hour. It can not be said as a matter of law that this speed was improper. Although it does appear that he did not stop, it can not be said that he did not look for the oncoming train nor that he did not look seasonably, and the presumption is that he did exercise ordinary care for his own safety.

We have said that an affirmative answer to an interrogatory,—If plaintiff had looked in the direction from which defendant's car was coming when his automobile was coming 6 or 8 feet north of the tracks just before he started to approach the tracks with his automobile, could he have seen the approaching interruban car?—did not require the conclusion that the plaintiff did not look at a seasonable and effective time for the oncoming car as he approached the crossing. **Fox v Conway et, Receivers, 27 Abs 33**, affirmed in Supreme Court, **133 Oh St 273**. We distinguished this answer from an answer to an interrogatory in **C. D. & M. Electric Company v O'Day, Administratrix, 123 Oh St 638**, which was conclusive that plaintiff's decedent had not looked at all toward the oncoming car as he approached the crossing where he was killed.

Defendant cites a number of authorities in support of its claim that the court should have entered judgment on its motion for judgment notwithstanding the verdict, among which is **Youngstown & Suburban Ry. Co. v Prigosin, 53 Oh Ap 189**, and the 8th syllabus thereof as follows:

"The jury's finding on a special interrogatory that plaintiff lost control of his truck and stalled it on the railway tracks, along with evidence that he at no time while approaching the crossing exercised his faculties of sight and hearing for the purpose of ascertaining the approach of a car, entitles defendant to judgment non obstante veredicto, as plaintiff was guilty of

negligence directly and proximately contributing to the collision." ··

It is obvious that in the cited case the court predicated its announcement, in part, upon the premise that the plaintiff did not exercise his faculties of sight and hearing to determine the approach of the car. That element is not in this case.

C. C. C. & I. Ry. Co. v Elliott, 28 Oh St 340, 3rd and 4th Syl. Contributory negligence was charged to the plaintiff because the undisputed facts show, that by the exercise of ordinary care he might have avoided the injury and that he failed to exercise that degree of care in that he did not look seasonally for the oncoming locomotive.

D. T. & I. Ry. Co. v Rohrs, 114 Oh St 493, enjoins upon one approaching a railroad crossing the obligation to look and listen for approaching trains and to do so at such time and place and in such manner as will make the looking and listening effective.

It is urged that the physical facts in this case are such that plaintiff, had he looked, must have seen the train when he was 20 or 25 feet from the track upon which he was struck. That may be true though contrary to the statement of the plaintiff that he saw no train when he did look. This conclusion is not sufficient to require that this court hold that plaintiff was contributorily negligent as a matter of law  The outstanding fact in this case is, that it may not be said that the plaintiff as a matter of law was chargeable with contributory negligence because he went upon the crossing at the time that the jury said he did. Nor may it be said that he was chargeable with contributory negligence upon his testimony of the conditions under which he went onto the track. It must be assumed that the plaintiff and other witnesses in the absence of proof to the contrary were telling the truth upon the witness stand. They may have been mistaken. The fact that the plaintiff says he did not see the train will not, in this case, preclude his recovery because had he seen it, as it

must be said he did, it was not so close, upon his testimony or upon the finding of the jury as to charge him with contributory negligence as a matter of law.

It will not do to put the testimony of any witness under the microscope and because there is found inconsistencies or mistakes of fact therein, that full weight may not be given to that which may be true. It is not at all unusual that the plaintiff might not have a clear, distinct and correct recollection of all the details of that which happened to him as he approached the crossing, stalled thereon, observed the oncoming train, undertook to remove himself and wife from the imminent crash resulting in her death and his unconsciousness and serious injuries. He says that when he first looked he did not see the oncoming train. That is physically possible, depending upon where he looked and how long he was on the track. But had he seen the train at the earliest possible moment, it cannot be said that he was negligent as a matter of law in going upon the crossing because he states that he saw the oncoming locomotive when it was approximately 1000 feet away. If he had seen it at this distance before he went onto the track, can it be said that he was negligent because he undertook to drive across the track when the train was coming a 1000 feet away? We think not.

The time when the train whistled may have been, under his statement, almost simultaneous with his first observation of the car or it may have been a moment after he saw the train. Upon his testimony, if the whistle sounded a moment before he saw the train, then there was presented the question whether or not the defendant was negligent in not giving the signal sooner. We discuss this question because it is urged that inasmuch as the plaintiff saw the train, the sounding of the whistle could have afforded him no information which he did not already have.

We shall not discuss the 6th, 7th and 8th assignments of error because our

consideration of the other assignments sufficiently indicates our view of the evidence and the effect which the jury had a right to give to it. We find no prejudicial error in said assignments.

The judgment will be affirmed.

GEIGER, PJ., concurs.
BARNES, J., concurs in judgment.